WALDEN, Chief Judge
(concurring, in part, and dissenting, in part).
I concur in the conclusion of the majority that the defendant was placed in double jeopardy.
I respectfully dissent from the majority judgment that the defendant, acting through her counsel, consented to the mistrial and waived her constitutional right to be discharged because of being placed twice in jeopardy for the same offense.
The complete record pertinent to this transaction follows with appropriate underlinings supplied:
“(* * * Thereupon, in- the absence of the jury panel, the folowing proceedings were had:)
“THE COURT: Mr. Steed, are you familiar with the title of that case that you speak of?
“MR. STEED: No, sir. It is a case that Judge Sample was reversed. The opinion came out within the last two weeks. The situation there was that a member of the jury—
“MR. ERICKSON: I think it is in the advance sheet.
“MR. STEED: It was in a mimeograph copy. The facts there, sir, was that a member of the jury, after being sworn, got a parking ticket or something of the kind—
“THE COURT: I have heard about it.
“MR. STEED: And he approached the Court, in the absence of the defendant, and discussed it with Judge Sample. I think the Judge told him not to pay any attention to it, to go on back—
“THE COURT: Excuse me for interrupting, but this juror, as I recall it, Mr. Erickson and the defendant were here—
“MR. STEED: I don’t think so, sir— I’m sorry, but I was watching particularly. The defendant was not in her seat at the time.
“THE COURT ;■ That the juror came up?
“MR. ERICKSON: I had told her she could walk around, when the Court announced recess.
“MR. STEED: I don’t believe she was present, sir. I want to be factually honest with the Court.
“MR. ERICKSON: I wanted to be sure. I wasn’t sure that was the man we seated or not.
“MR. STEED: That case, it goes so far afield in that — -apparently, the Court isn’t even supposed to say good morning to them after they have been sworn. I think it is ridiculous — well—■
“THE COURT: It is provided here in 914.01 it says that the defendant shall be present at certain times — 'Provided, however, that upon the beginning of the trial of a defendant upon any charge contained in any indictment or information, and the defendant being present thereat, in progress of said trial, or before the verdict of the jury shall have been returned into Court, voluntarily, without leave of Court first had and obtained, absent himself from the presence of the Court, the trial of said cause or the return of the verdict of the jury in said case shall not thereby be postponed or delayed, but said trial, the submission of said case *869 to the jury for verdict, and the return of the verdict thereon shall proceed in all respects as though the defendant were present in Court at all times.’
“That is not what we have here. The thing that gives the Court concern— would you be disposed, Mr. Erickson, to stipulate in the record that the alternate juror may be discharged — I believe rather than try and select another juror, we might just as well go on with our regular panel. In view of just what has happened, the Court was just as innocent as it could be.
“MR. STEED: Sure, as he was there.
“THE COURT: That’s right. They have just gone — it is my understanding in this case the juror did come to the Judge originally outside of the Court.
“MR. STEED: I don’t recall.
“THE COURT: I don’t know, but Judge Sample told me that.
“MR. STEED: I see.
“THE COURT: But the Court just hadn’t had time to run yet, and the juror walked up to the Court here. Of course, he could have just as easily — well, no, he couldn’t, because I don’t think the bailiff would let him out — but, unless Mr. Erickson is disposed to so stipulate — now, Mr. Erickson, when I pose those questions to you, I am just trying to find out where we are. I am not asking you — it is immaterial to me whether you agree to this or you agree to that, or you agree to anything. I just asked the questions for enlightenment. But in the face of this case, unless it was such a stipulation, the Court would give consideration to declaration of a mistrial.
'‘MR. STEED: That thought had entered my mind, sir. For that reason, and also for the reason of the jury not being prepared to be locked up, apparently would be a hardship on this man Miller, whose wife is a diabetic, as reported, that might be a happy solution to it, sir. As I understand it, the defendant is out on bond. I don’t think any particular hardship would result. The state would offer no objection to her remaining on the same bond and the case being tried at the next available time.
"MR. ERICKSON: You might even move for a mistrial.
“THE COURT: I think this, the thing that is giving the Court concern, is simply to make a record, and I think the Court zrill do it of its own volition—
“MR. STEED: That case has gone so far afield in that thing, Judge, I just think that we have to do it in the interest of justice. If the Court would like — I would move under the circumstances for the Court to declare a mistrial.
“THE COURT: Do you have anything that you want to say on the motion?
“MR. ERICKSON: No, sir. That motion is in the record.
“THE COURT: The state has — Mr. Steed expressed himself. The Court has previously announced it was giving consideration to granting a mistrial of its own motion, and in the light of this opinion of the Second District Court, filed November 16, 1965, in the case of Wyatt Carroll Deans and Ossie McGee, appellants, against the State of Florida, case No. 5805 of the Second District — as reluctant as the Court is to do it, in view of the day’s effort that has been put in, but — and the Court had declared a recess. If the Court was confident that the defendant and her counsel were right here while it happened, the Court presently would be disposed to proceed otherwise. But, frankly, the Court doesn’t know—
“MR. STEED: I did observe, Your Honor. I frankly did, because I was concerned. I had that case in mind. When the juror came up, I looked. The defendant was not in the courtroom. Counsel was looking at the Court intent *870 ly, but said nothing. I am talking about defense counsel.
“MR. ERICKSON: I had some question in my mind as to just who that man was.
“MR. STEED : But the defendant was not at the table, sir. I have to take an oath on that.
“THE COURT: All right, sir. In view of what transpired, with reference to the alternate juror, and with reference to this decision, that the Court has already called attention to, the Court on its own motion is declaring a mistrial.
“ ■* * *
“Have the jury come in
“(Jury returned to courtroom.)
“ * * *
“THE COURT: Well now, for the enlightenment of all of you, and Mr. Alternate Juror, I am particularly asking your close attention to this statement — the Court has spent a day. It is now 4:15— has spent a day, almost, on this case. And the Court is confident that no one, even in the slightest way, intentionally did anything or was aware that he was doing anything that was improper under the law. But since you gentlemen went into the jury room at the Court’s direction, and as the Court announced a ten minute recess, the alternate juror, the individual who had just been seated as the alternate juror, came out of the jury room and approached the bench and approached the Judge and talked with the Judge about a matter that involves a personal situation of his, a family situation of his, and involves the health of a member of the family. But the Court is advised that shortly prior to — very shortly prior to the alternate juror’s approaching the bench and talking with the Judge, that the defendant, on instructions of her counsel, her counsel understanding, and properly so, that the Court had announced a ten minute recess, counsel advised the defendant that she may leave the courtroom momentarily; that she had left the courtroom while the alternate juror approached the Judge and talked to the Judge.
“I am sure that you gentlemen, all of you or any of you — possibly none of you, don’t understand the intricacies and niceties involved in this situation, but as stated earlier in the day, trying law suits and serving as jurors is not your main line of business, and you are not supposed to be experienced and learned in the law similar to judges and prosecutors and attorneys. Judges and prosecuting attorneys are not experienced in your line, either. So, we understand why you are not. But whether you understand the intricacies or niceties of the situation or not, we have a most recent situation that —opinion that has come out of the immediate appellate district of this Court— or such was the case prior to the creation of the Fourth District Court of Appeal. But it is an opinion by the Second District, and in the Court’s opinion, it un-equivoca[b]ly states that a juror conferring with the Court out of the presence of the defendant is revers[i]ble error, and if there is revers[i]ble error, in the Court’s opinion, it is appropriate and advisable for the state and for the defendant that it be corrected at this time, if it is possible for us to do it, rather than compounding the situation by our spending a lot more time and effort and other expenditures on it.
“The Courts wants to make it crystal clear that no one is asserting or intimating even in the slightest, as I stated before, that the alternate juror intended any impropriety. We know that he didn’t. The Court is certain of that without inquiring. But in the face of the opinion mentioned, and the other law on the subject, the Court, of its own motion, at this time declares a mistrial in this case. You are excused from further service, gentlemen.
“(Whereupon the jury was excused.)”
*871 A reading of this record and the statements of the participants, both in and out of context, reveals no basis in fact or law for a finding that defendant’s counsel waived his client’s constitutional rights and consented to the entry of a mistrial. Support for this view is found in the cáse of State ex rel. Williams v. Grayson, Fla.1956, 90 So.2d 710, 63 A.L.R.2d 777. There facts much more compelling and suggestive weré deemed insufficient to constitute a consent by the accused to the entry of a mistrial and a waiver by the accused of the benefit of a former jeopardy plea.
The words "consent” and “waiver”, as here used, may be considered as synonymous. They indicate a concurrence of wills. They mean a voluntary yielding of the will to the proposition of another. They mean an agreement; the act or result of coming into harmony or accord. And in the case of waiver, it means the intentional or voluntary relinquishment of a knozvn right. Manifest throughout a consideration of these two terms is that they are builded upon a full knowledge of the material facts. See Black’s Law Dictionary, Fourth Edition, p. 377, 1751. Here, a reading and a re-reading of the record fails to disclose any basis for a finding that the trial court and counsel had full knowledge of the material facts and realized that a mistrial would result in the discharge of the defendant because double jeopardy would attach.
It is patent that the trial court granted a mistrial on its own motion as confirmed by the trial judge’s own statements made on four separate occasions. It was not entered upon stipulation, motion of counsel, or upon consent, either express or implied, on the part of the defendant or her counsel. There is not the slightest suggestion or basis for a notion that the trial judge was in any way misled, tricked or lulled by counsel into the action he took, or that he granted a mistrial in reliance upon any stance taken or suggestion or comment made by the defendant’s counsel.
Despite the wholly innocuous exchange between the trial judge and the alternate juror, the mistrial was entered upon the misapprehension that such action was absolutely necessary as a matter of law based on Deans v. State, Fla.App.1965, 180 So.2d 178. As reflected, the court prolonged the colloquy only for the meritorious and proper purpos'e of making a record.
Criminal case trial practice and techniques suggest that it would be a remarkable event for defense counsel to have consented to the mistrial under the circumstances. Defense counsel under our adversary system have historically held the state exactly to all its lawful burdens and assiduously assured that the accused receives the benefit of all lawful protections, rights, and immunities. For these reasons waivers by defense counsel are not as a rule asked or expected.
It seems most likely, and this is the impression created by the record, that defense counsel deliberately chose not to participate in the mistrial decision. Why? Well, if the Deans case meant what the trial court thought it did, it would be a built-in reversible error for the court to fail to grant a mistrial. If the Deans case meant what the trial court thought it did, and the court granted the mistrial, it would delay the trial and give the defense a new lease, a result usually welcomed by defendants. If, as it happened, the Deans case does not require a mistrial, a granting of it would bring double jeopardy into play and result in thé dismissal of the charges. In other words, the defendant had nothing to gain by participating in the mistrial decision and consenting to it. The defendant had everything to lose by participating and consenting to the mistrial, namely, an exposure to the death penalty. It goes against reason and everything known to criminal law practice to think that defendant’s experienced lawyer would consent to the mistrial and thereby waive his client’s constitutional rights when the dismissal of a first degree murder charge was in balance.
*872 The double jeopardy prohibition is a serious and fundamental matter — a valuable safeguard belonging to the citizenry. Not only has it been long proscribed by the United States Constitution, it is found in our Declaration of Rights of the Florida Constitution since the time the first Constitution was written in the territory of Florida in 1838. While its protection can be waived, a waiver should not be lightly or flimsily implied lest the whole concept be eroded away. Of course, the notion of an accused not being called to account for a criminal1 charge is an unpalatable circumstance, particularly in these days where crime and crime rates are much in the news. Regardless, our concept of law and duty requires that faithful credit and force be given without exception to this important constitutional provision, and it does not lie within the province of the court to withhold its protection simply because its application will mean that an accused person will be discharged.